# WANG HECKER LLP

111 BROADWAY, SUITE 1406
NEW YORK, NEW YORK 10006

DANIEL MULLKOFF
212.620.2606 TEL
212.620.2610 FAX

DMULLKOFF@WANGHECKER.COM

<u>**By ECF**</u>                                                        December 19, 2025

The Honorable Kenneth M. Karas
United States District Judge
The Hon. Charles L. Brieant Jr.
Federal Building and United States Courthouse
300 Quarropas Street
White Plains, New York 10601-4150

     Re:    *City of Poughkeepsie, et al. v. County of Dutchess, et al.*, No. 25-cv-7668

Your Honor:

    This firm represents Plaintiffs City of Poughkeepsie, Gladys Lyles, and Lisa Cummings. Pursuant to Your Honor's Individual Rules of Practice, we submit this letter in response to Defendants' Pre-Motion Letter dated December 12, 2025 (ECF No. 14). As set forth below, any motion to dismiss would be futile.

## Background

    This case seeks injunctive relief to prevent the County of Dutchess (the "County") and County Executive Sue Serino from exacerbating racial segregation in violation of federal and state fair housing laws by abruptly withdrawing from a long-planned compromise to combat homelessness and unilaterally imposing an emergency shelter at 26 Oakley Street ("26 Oakley") in the City of Poughkeepsie (the "City"). As set forth in the Complaint (ECF No. 1), decades of policies like these, imposed onto the City by the County and others, have caused and exacerbated stark racial segregation in the City and surrounding area. *Id.* ¶¶ 19-41.

    The City, which has a significantly higher proportion of Black residents than the mostly white County, has long borne the lion's share of the burden of hosting residential institutions for the County, including shelters and an ever-expanding jail. For example, the City constitutes only 10.4% of the County's population but has nearly 40% of total shelter beds. *Id.* ¶ 44. In 2020, the County placed an emergency shelter called PODs, for 150 single adults, on the Northside of the City, immediately next to the County jail, which itself had expanded over City opposition. *Id.* ¶¶ 46, 38-40. The presence of the PODs, along with the jail, has negatively impacted long-term residents of the area. *Id.* ¶¶ 40, 47. Property values and safety levels have decreased, and there have been numerous instances of people struggling with mental illness defecating and using intravenous and other substances on the properties of nearby residents. *Id.* ¶¶ 40-41, 47.

    In that context, in 2022 the County declared, without seeking any input from the City, that it was placing yet another shelter, which would house 120 single

adults, on the Northside of the City. *Id.* ¶ 48. The location, 26 Oakley, is in a residential neighborhood, just steps away from many homes owned predominantly by Black residents, including Plaintiffs Lyles and Cummings. *Id.* ¶¶ 15-16, 55-58. The City and its residents opposed this placement and in early 2025 reached an agreement with the County to place the shelter outside the City. *Id.* ¶¶ 52-54, 66-73. An alternative site, in the Town of Poughkeepsie, has long housed shelters and is not located in a residential area. It remains available and its use would avoid the unlawful segregative harms that will result from placing the shelter at 26 Oakley. *Id.* ¶¶ 59-60, 74. But Defendant Serino then abruptly informed the City that the County no longer supported the agreement and would instead unilaterally place the shelter for single adults at 26 Oakley. *Id.* ¶ 75. This lawsuit followed.

### **Defendants' Motion to Dismiss Would be Futile**

Defendants' proposed motion to dismiss would be futile because Plaintiffs plausibly allege violations of federal and state fair housing laws. Those statutes make unlawful housing practices that (1) perpetuate segregation, (2) disparately impact a protected class, or (3) subject a protected class to disparate treatment. Plaintiffs plausibly allege that Defendants' proposal to place the shelter at 26 Oakley Street does all three.

With respect to perpetuating segregation, Plaintiffs allege both elements: (1) that there are "segregated housing patterns because of race" in the Northside community; and (2) Defendants' challenged practice "creates, increases, reinforces [and] perpetuates segregated housing patterns[.]" Compl. ¶¶ 79-90, 24 C.F.R. § 100.500(a); *see Mhany Mgmt. v. County of Nassau*, 819 F.3d 581, 619-20 (2d Cir. 2016). *See Francis v. Kings Park Manor*, 992 F.3d 67, 80 (2d Cir. 2021) (New York Executive Law § 296 follows the same framework as the FHA). Plaintiffs allege statistical evidence to support this claim, showing that Defendants' plan would result in increasing the concentration of the County's Black residents in the City, and in the Fifth Ward and Northside areas specifically, and would impede the reduction in segregation that would result if the shelter were instead placed in the alternative location in the Town of Poughkeepsie. Compl. ¶¶ 79-90. Accordingly, placing the shelter at 26 Oakley would perpetuate and increase segregation. *See Mhany*, 819 F.3d at 620 ("plaintiffs more than established a prima facie case" that challenged zoning restriction "perpetuates segregation"); *Huntington Branch, NAACP v. Town of Huntington*, 844 F.2d 926, 937-38 (2d Cir. 1988) (restricting low-income multifamily housing to a minority area perpetuated segregation).

Plaintiffs also plausibly plead the elements of a disparate impact claim – "(1) the occurrence of certain outwardly neutral practices, and (2) a significantly adverse or disproportionate impact on persons of a particular type produced by the defendant's facially neutral acts or practices." *Mhany*, 819 F.3d at 617. They do so by alleging that Defendants' unilateral policy decisions disproportionately impact Black residents of the City, and in particular the Black communities on the Northside that surround 26 Oakley, including Plaintiff Lyles and Plaintiff Cummings. Compl. ¶¶ 79-90. The Complaint alleges that previous similar actions

have harmed those communities, *id.* ¶¶ 19-47, and that the County's plan would cause further harm, including by reinforcing racial segregation and preventing integration in the area, by causing the property values of residents' homes to decrease, and by otherwise harming their social and economic welfare. *Id.* ¶¶ 79-90; *see L.C. v. LeFrak Org.*, 987 F. Supp. 2d 391, 400-02 (S.D.N.Y. 2013) (describing limited requirement at pleading stage for FHA claims).

Plaintiffs also plausibly plead a disparate treatment claim, alleging "that animus against the protected group was a significant factor in the position taken by the municipal decision-makers themselves or by those to whom the decision-makers were knowingly responsive." *Mhany*, 819 F.3d at 606 (citation omitted). Plaintiffs plead extensive facts supporting an inference of disparate treatment, including the historical background of Dutchess County's policy, the events that led to the decision, and its impact on the Black community in the City. Compl. ¶¶ 43-104, 107. This is more than sufficient at the pleading stage. *See L.C.,* 987 F. Supp. 2d at 401.

Defendants present no basis for dismissing Plaintiffs' claims prior to discovery. Defendants cite outdated and inapposite authority to argue that the harms alleged in the Complaint are not cognizable under the Fair Housing Act, relying on a 1987 district court order *after* a bench trial. First, as described above, the Second Circuit and federal regulations make clear that a housing practice violates the FHA when it perpetuates segregated housing patterns. *E.g.,* 24 C.F.R. § 100.500. The cases Defendants cite did not even involve segregative-effect claims and are in any event not to the contrary. Second, even with respect to Plaintiffs' disparate impact and disparate treatment claims, courts do not apply Defendants' interpretation of the FHA to literally require that the challenged policy have the impact of rendering housing unavailable. To the contrary, courts recognize disparate impact claims based on a wide variety of harms to the protected class. *See, e.g., Saint-Jean v. Emigrant Mortg. Co.*, 129 F.4th 124, 140 (2d Cir. 2025) (affirming disparate impact claim based on "reverse redlining," *i.e.,* lenders extending credit for housing on unfair terms in minority areas); *Washington v. HUD*, No. 16 Civ. 3948 (ENV), 2019 WL 5694102, at *12, 20 (E.D.N.Y. July 29, 2019) (impinging on individual's right to live in an integrated neighborhood is cognizable in connection with challenge to a federal mortgage program); *Nat'l Fair Hous. All. v. Fed. Nat'l Mortg. Ass'n*, 294 F. Supp. 3d 940, 944, 948 (N.D. Cal. 2018).

Finally, there is no basis to dismiss the zoning claim. Plaintiffs have alleged that the County is not immune from City zoning laws under *County of Monroe*'s multi-factor test, including because the public interest and the City's local interests strongly disfavor the County's proposal, and there are available alternative means for the County to achieve its purposes. Compl. ¶¶ 120-22. Moreover, the *County of Monroe* test is a fact-specific inquiry that is inappropriate for disposition at the motion to dismiss stage. *See County of Herkimer v. Village of Herkimer*, 109 A.D.3d 1166, 1168 (4th Dep't 2013) (remanding for further factual development).

Thus, for the aforementioned reasons, Plaintiffs' claims all would survive Defendants' motion to dismiss.

> Respectfully submitted,
>
> /s/ Daniel Mullkoff
>
> Daniel Mullkoff

cc: Defense Counsel, via ECF